IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 4, 2008

## STATE OF TENNESSEE v. SPENCER LOUIS LARK, JR.

**Direct Appeal from the Circuit Court for Tipton County**
No. 5137     Joseph H. Walker, III, Judge

No. W2007-00684-CCA-R3-CD  - Filed March 5, 2009

Following a jury trial with co-defendant Maurice Nash, Defendant, Spencer Louis Lark, Jr., was found guilty of two counts of aggravated assault, a Class C felony, and one count of reckless endangerment with a deadly weapon, a Class E felony. Following a sentencing hearing, the trial court sentenced Defendant as a Range II, multiple offender, to six years for each aggravated assault conviction, and two years for his felony reckless endangerment conviction. The trial court ordered Defendant to serve his sentences concurrently for an effective sentence of six years. Defendant does not appeal the length or manner of service of his sentences. In his appeal, Defendant challenges the sufficiency of the convicting evidence. After a thorough review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

James E. Thomas, Memphis, Tennessee (on appeal); and Frank Deslauriers, Covington, Tennessee (at trial) for the appellant, Spencer Louis Lark, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany, Assistant Attorney General; D. Michael Dunavant, District Attorney General; James Walter Freeland, Jr., Assistant District Attorney General; and P. Neal Oldham, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

## I. Background

Katherine Smith testified that she lived at 505B Simonton Street in Covington. Ms. Smith said that she and her family were having a barbeque on Sunday afternoon, April 17, 2005. While

the family was sitting in the yard, Ms. Smith heard the sound of gunshots. She looked up and saw a green or gold car closely followed by a white car driving "real fast." Ms. Smith told her family to run because she was afraid the vehicles would turn around and drive back down her street. Ms. Smith said that she could not identify the drivers of the vehicles, but she had seen co-defendant Nash driving the white car before the incident. Ms. Smith believed that she heard about three gunshots. Ms. Smith acknowledged that she told the investigating officers that co-defendant Nash was the driver of the white car, but she said that she was only repeating what other people had told her.

Gary Wortham testified that he drove from Haywood County to Covington to visit his child and the child's mother, Shanta Mason, on April 17, 2005. Mr. Wortham said that he arrived in Covington between 12:30 p.m. and 1:00 p.m., in his gold Buick Regal. Mr. Wortham stopped at an intersection, and a burgundy four-door Cutlass pulled up beside him. Mr. Wortham identified Defendant as the driver of the Cutlass but could not identify the two people who were in the car with Defendant. Mr. Wortham said that Defendant jumped out of the Cutlass, pulled off his shirt, and yelled at Mr. Wortham, "What's this sh__ you going around telling you going to do to me?" Mr. Wortham said that he did not know what Defendant was talking about and that he had not had any disagreements with Defendant. Ms. Mason and a friend came up to the intersection and pulled Defendant back from Mr. Wortham's car. Defendant told Mr. Wortham to leave Covington.

Mr. Wortham drove down Peeler Street, and Defendant followed him, "riding up on [Mr. Wortham's] bumper." Mr. Wortham stopped at a red light, and one of the passengers in Defendant's vehicle tried to get into the back seat of Mr. Wortham's vehicle. Mr. Wortham ran the red light and was able to drive away.

Mr. Wortham said that he went to the house of his cousin, Anthony Powell. Mr. Wortham told Mr. Powell about the incident and asked Mr. Powell to drive with him to Ms. Mason's house because Mr. Wortham needed to give Ms. Mason some disposable diapers for the child. The return trip was uneventful, and Mr. Wortham and Mr. Powell visited with Ms. Mason for awhile. Later,

Mr. Wortham, Mr. Powell, and Ms. Mason's brother, Michael Mason, left to drive to the store in Mr. Wortham's vehicle. Mr. Powell was in the front passenger seat and Mr. Mason was in the back seat.

Mr. Wortham stated that he was driving down Best Street when he saw co-defendant Nash, Defendant, and two other individuals approaching in a white Buick LeSabre from the opposite direction. Mr. Wortham identified co-defendant Nash in court as the driver of the vehicle. Mr. Wortham said that Defendant was riding in the back seat behind co-defendant Nash. Mr. Wortham did not know the other two men in the car. Co-defendant Nash turned his car around and drove up behind Mr. Wortham. Co-defendant Nash pulled his car up to the driver's side of Mr. Wortham's vehicle and tried to make Mr. Wortham stop. Mr. Wortham drove between two parked cars, and co-defendant Nash again followed him for approximately two blocks. Mr. Wortham said that he heard gunshots when he approached a stop sign in front of a housing development project. Mr. Wortham said there were other people driving and walking in the area. Mr. Wortham acknowledged that the two vehicles were driving fast.

Mr. Wortham heard a bullet hit the trunk of his car. He ducked down and drove off. At trial, Mr. Wortham identified a photograph of his vehicle with five bullet holes in the vehicle's trunk, taillight, and bumper. Mr. Wortham said that one of the bullets pierced the trunk and struck a speaker behind the backseat where Mr. Mason was sitting. Mr. Wortham said that he drove down Long Street with co-defendant Nash behind him and turned right on Simonton Street. Mr. Wortham heard more gunshots. Mr. Wortham said that co-defendant Nash pulled away from his vehicle when Mr. Wortham turned onto Best Street.

On cross-examination, Mr. Wortham denied that he offered to drop the charges if Defendant paid for the repairs to his vehicle. Mr. Wortham said that instead, Defendant initiated the offer after Defendant was released from jail. Mr. Wortham said that the investigating officers told him that co-defendant Nash believed that the rims on Mr. Wortham's vehicle belonged to co-defendant Nash.

Officer Allen Wilson, a detective with the Covington Police Department at the time of the shooting, testified that he photographed Mr. Wortham's vehicle on April 18, 2005. He retrieved some bullet fragments from the vehicle's taillight and the speaker in the trunk.

Shanta Lashay Mason testified that she lived on Peeler Road in Covington and that Mr. Wortham was her child's father. Ms. Mason said she saw Mr. Wortham driving down Best Street with Defendant behind him. Defendant pulled his vehicle up beside Mr. Wortham's vehicle. Ms. Mason said that Defendant got out of his vehicle, pulled his shirt off, and began yelling at Mr. Wortham. Ms. Mason and her friend, Joyanna White, ran up to the cars because they thought the men were going to fight. Ms. White pushed Defendant away from the cars. Ms. Mason said that Mr. Wortham drove away with Defendant's vehicle following him.

Ms. Mason said that two days later, co-defendant Nash drove by her house at a fast speed while Defendant hung out of the window with a gun in his hand. On cross-examination, Ms. Mason clarified that Defendant first drove by her house alone. Mr. Wortham was behind Defendant on his way to visit Ms. Mason. Defendant drove on past Ms. Mason's house and then returned with co-defendant Nash driving Defendant's vehicle. Mr. Wortham and Ms. Mason were sitting on Ms. Mason's front porch when co-defendant Nash drove by. Ms. Mason acknowledged that Defendant lived in her neighborhood. Ms. Mason said that she reported the incident to the police but no arrests were made.

Michael Mason testified that he was living with his sister, Shanta Mason, in Covington at the time of the offenses. Mr. Mason said that he assisted Ms. Mason in trying to stop a potential fight between Defendant and Mr. Wortham before the shooting incident. Mr. Mason said that Defendant told Mr. Wortham that he had heard that Mr. Wortham was going to do something to him. Mr. Mason said that after the altercation at the stop sign, Mr. Wortham drove off in one direction and Defendant in another.

Mr. Mason drove with Mr. Wortham to the store later that evening. Mr. Mason spotted co-defendant Nash's vehicle at the end of Best Street. Mr. Mason said that he did not see Defendant in the car but identified the two other passengers in the vehicle as Stanley Nash and Fred Mason. Mr. Mason provided a similar description of the ensuing chase. Mr. Mason said that the gunshots commenced when Mr. Wortham pulled up at a stop sign. Mr. Mason looked back and saw a man leaning out of the open front passenger side car window, pointing a gun at Mr. Wortham's vehicle. Mr. Mason identified Stanley Nash as the person who was sitting in the front passenger seat and said that there was only one more person in the car.

On cross-examination, Mr. Mason acknowledged that he told the investigating officers that Stanley Nash and Fred Mason were the shooters.

Stanley Nash testified on behalf of co-defendant Nash. Mr. Nash acknowledged that he had entered a plea of guilty to charges arising out of the shooting incident. He stated that he testified at the guilty plea submission hearing that Fred Mason was the only one in the car with him when the shooting occurred.

On cross-examination, Mr. Nash acknowledged that he gave a statement to the investigating officers denying his involvement in the shooting but insisted that the statement was not true. Mr. Nash said that Fred Mason did not know that Mr. Nash was going to shoot at Mr. Wortham. Mr. Nash said that he and Mr. Wortham had engaged in an altercation at a night club sometime before the incident. Mr. Nash denied that Fred Mason was following Mr. Wortham's vehicle. Mr. Nash said that after he shot approximately six times, Fred Mason made him get out of the car. Mr. Nash denied that he talked to Keith Brown about the incident when they were both incarcerated in the jail. Mr. Nash said that Mr. Brown lied when he said that Mr. Nash told him that Mr. Nash and Fred Mason were the shooters.

## II. Sufficiency of the Evidence

Defendant argues that the evidence was insufficient to support a finding that he was criminally responsible for the offenses. Defendant submits that neither Mr. Nash nor Michael Mason testified that he was even in the vehicle when the shootings occurred, nor was there any proof that he provided any encouragement to Mr. Nash who testified that he was the shooter. Defendant also points out that there was no evidence that he was armed or that he was in any position to discharge a weapon at Mr. Wortham's vehicle.

In reviewing Defendant's challenge to the sufficiency of the convicting evidence, we must review the evidence in a light most favorable to the prosecution in determining whether a rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced on appeal with a presumption of guilt. State v. Black, 815 S.W.2d 166, 175 (Tenn. 1991). The defendant has the burden of overcoming this presumption, and the State is entitled to the strongest legitimate view of the evidence along with all reasonable inferences which may be drawn from that evidence. Id.; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The jury is presumed to have resolved all conflicts and drawn any reasonable inferences in favor of the State. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984). Questions concerning the credibility of witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

Defendant was charged with the aggravated assault of Gary Wortham and Michael Mason. As relevant here, a person commits aggravated assault who "[i]ntentionally or knowingly commits an assault as defined in § 39-13-101 and . . . uses or displays a deadly weapon." T.C.A. § 39-13-102. "A person commits assault who . . . [i]ntentionally or knowingly causes another to reasonably fear imminent bodily injury." Id. § 39-13-101(a)(2). Defendant was also charged with felony reckless endangerment which is the reckless engagement "in conduct which places or may place another

person in imminent danger of death or serious bodily injury" by use of a deadly weapon. Id. § 39-13-103.

The State pursued Defendant's convictions of aggravated assault and felony reckless endangerment under a theory of criminal responsibility. Tennessee law provides that a person is "criminally responsible for an offense committed by the conduct of another if: [A]cting with intent to promote or assist the commission of the offense, or to the benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." T.C.A. § 39-11-402(2). Criminal responsibility is not itself a separate crime; rather, it is "solely a theory by which the State may prove the defendant's guilt of the alleged offense . . . based upon the conduct of another person." State v. Lemacks, 996 S.W.2d 166, 170 (Tenn. 1999).

Under a theory of criminal responsibility, a defendant's presence and companionship with the perpetrator of a felony before and after the commission of the offense are circumstances from which that defendant's participation in the crime may be inferred. State v. Ball, 973 S.W.2d 288, 293 (Tenn. Crim. App. 1998). No particular act need be shown, and the defendant need not have played a physical role in the crime in order to be held criminally responsible for the crime. State v. Caldwell, 80 S.W.3d 31, 38 (Tenn. Crim. App. 2002). Rather, to be held criminally responsible for the acts of another, the defendant need only "associate himself with the venture, act with knowledge that the offense is to be committed, and share in the criminal intent of the principle in the first degree." State v. Maxey, 898 S.W.2d 756, 757 (Tenn. Crim. App. 1994).

Although Michael Mason and Stanley Nash testified that Defendant was not in the vehicle when the shooting occurred, Mr. Wortham's testimony clearly placed Defendant in the vehicle during the incident. Inconsistencies and conflicts in the evidence are left to the jury to resolve. Bland, 958 S.W.2d at 659. Viewing the evidence in a light most favorable to the State, Michael Mason, Shanta Mason, and Mr. Wortham testified that Defendant attempted to engaged Mr. Wortham in an altercation hours before the shooting incident. Mr. Wortham testified that later that day, co-defendant Nash, with Defendant in the vehicle, followed Mr. Wortham's vehicle for a period

-7-

of time and attempted to force Mr. Wortham to stop. When Mr. Wortham managed to elude co-defendant Nash's vehicle, co-defendant Nash caught up with him and someone in co-defendant Nash's vehicle began to discharge a weapon. One of the bullets pierced the trunk of Mr. Wortham's vehicle and lodged in a speaker directly behind the vehicle's back seat where Michael Mason was sitting. Ms. Mason testified that co-defendant Nash drove by her house two days later while Mr. Wortham was visiting her, and Defendant leaned out of an open window displaying a gun in his hand.

Ms. Smith testified that her family, including her grandchildren, were in the yard when the two vehicles drove by, and that she heard the sound of gunfire. Ms. Smith instructed the children to run because she was afraid they would be struck by a bullet. Mr. Wortham acknowledged that the two vehicles were speeding when the gunshots were fired, and that there were pedestrians and other drivers in the vicinity of the shooting.

Based on the foregoing, a rational trier of fact could find beyond a reasonable doubt that Defendant acted with intent to promote or assist in the commission of the aggravated assaults and reckless endangerment offenses, that Defendant associated himself with the offenses before, during, and after their commission, that Defendant acted with knowledge that the offenses were going to be committed, and that Defendant was thus criminally responsible for the conduct of the others. Defendant is not entitled to relief on this issue.

## CONCLUSION

After a thorough review, we affirm the judgment of the trial court.

_____

THOMAS T. WOODALL, JUDGE